RITTER v. STATE
2022 OK 73
Case Number: 119840
Decided: 09/20/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 73, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

DR. VALERIE RITTER, for herself as an Individual and for and on behalf of her Minor Children RR and ER; KIMBERLY BUTLER, for herself as an individual and For and on behalf of her Minor Child HB; DR. BRITNEY ELSE, for herself as an Individual and for and on behalf of her Minor Child BJ; and THE OKLAHOMA STATE MEDICAL ASSOCIATION, an Oklahoma Not For Profit Corporation, Plaintiffs/Appellees,

v.
THE STATE OF OKLAHOMA; AND THE HONORABLE KEVIN STITT In his official capacity as GOVERNOR OF OKLAHOMA, Defendants/Appellants.

Appeal from the District Court of Oklahoma County
Honorable Natalie Mai, Trial Judge

¶0 The plaintiffs/appellees, doctors, parents, and the Oklahoma State Medical Association, (collectively, doctors) brought a declaratory judgment action against the State of Oklahoma and the Governor in the District Court of Oklahoma County. They sought: 1) a declaration that Senate Bill 658, codified as 70 O.S. Supp. 2021 Ch. 15, §§1210-189 and 190, which restricts school districts of local control of public schools from making decisions about mask wearing to school in order to protect all students from contracting or spreading a highly contagious and infectious disease, only when the Governor declares a state of emergency is unconstitutional; and 2) an injunction enjoining the alleged unconstitutional legislation from being enforced. The trial court granted a temporary injunction, enjoining the State from enforcing portions of Senate Bill 658. The State of Oklahoma and the Governor appealed. We retained the cause and hold that 70 O.S. Supp. 2021 §§1210-189 and 190, are an unconstitutional, impermissible delegation of Legislative authority. However, because the objectionable provision is stricken, the remainder of the statutes may be upheld.

APPEAL PREVIOUSLY RETAINED; 
ORDER OF THE DISTRICT COURT VACATED. 

Robert A. Nance, Chad C. Taylor, Oklahoma City, Oklahoma,

Donald M. Bingham, Sharon K. Weaver, Tulsa, Oklahoma, for Plaintiffs/Appellees.

Bryan Cleveland, Mithun Mansinghani, Office of the Attorney General, State of Oklahoma, Oklahoma City, Oklahoma, for Defendants/Appellants.

Hilary H. Clifton, Oklahoma City, Oklahoma, Jesse L. Marks, Denver, Colorado, for American Academy of Pediatrics, and the Oklahoma Chapter of American Academy of Pediatrics, Amicus Curiae.

Jeffrey B. Dubner, Jessica Anne Morton, Democracy Forward Foundation, Washington, D.C., for American Academy of Pediatrics, Amicus Curiae.

Nick Southerland, Brian S. Wilerson, Tulsa, Oklahoma, for Oklahoma Disability Law Center, Amicus Curiae

KAUGER, J.:

¶1 The determinative question presented is whether Senate Bill 658, codified as 70 O.S. Supp. 2021 Ch. 15, §§1210-189 and 190, is an unconstitutional restriction of the ability of public schools to exercise local control of the health and welfare of students.

THE PARTIES, THE ALLEGED FACTS, 
AND THE PROCEDURAL HISTORY.

¶2 The plaintiff/appellee, Dr. Valerie Ritter, is a Doctor of Osteopathic Medicine, specializing in Pediatrics. She is also the parent of two children who are under the age of twelve, and who are enrolled in the Tulsa Public School system. One of her children has a history of bronchiectasis and hospitalizations for respirator distress and pneumonia. The plaintiff/appellee, Kimberly Butler, is the mother of four minor children also enrolled in the Tulsa Public School System. One of her children has epilepsy and Autism Spectrum Disorder. Ms. Butler, whose graduate degree is in public health, also works in the medical industry as a Senior Program Officer overseeing Maternal Child Health at the George Kaiser Family Foundation. She also serves on the Board of Directors for a Tulsa hospital and on the City of Tulsa's COVID-19 Testing Task Force.

¶3 The plaintiff/appellee, Mary Ann Martin is the parent of three minor children who are enrolled in the Norman Public School System. One of her children has serious health issues and a compromised immune system. The plaintiff/appellee, Dr. Britney Else is the parent of a minor child who is enrolled in the Broken Arrow Public School System. Dr. Else is a family-medicine and sports-medicine physician. The plaintiff/appellee, Oklahoma State Medical Association is a domestic not for profit corporation whose mission is "Better Health for Oklahoma."

¶4 On March 15, 2020, Oklahoma's Governor, J. Kevin Stitt, declared a statewide emergency due to the coronavirus pandemic and the impending threat of the spread of COVID-19 to the people of this State and their peace, health, and safety.

¶5 Senate Bill 658 concerns additions and amendments to school health and safety statutes 70 O.S. 2011 Ch. 15, §§1210.19170 O.S. 2011 Ch. 15 §1210.191

A. No minor child shall be admitted to any public, private, or parochial school operating in this state unless and until certification is presented to the appropriate school authorities from a licensed physician, or authorized representative of the State Department of Health, that such child has received or is in the process of receiving, immunizations against diphtheria, pertussis, tetanus, haemophilus influenzae type B (HIB), measles (rubeola), (rubella), poliomyelitis, varicella, and hepatitis A or is likely to be immune as a result of the disease.

Title 70 O.S. 2011 Ch. 15 §1210.194

A. Any child afflicted with a contagious disease or head lice may be prohibited from attending a public, private, or parochial school until such time as he is free from the contagious disease or head lice. . . .

¶6 However, Senate Bill 658 creates/adds two new sections, 70 O.S. Supp. 2021 §§1210-189 and 190, which work together.

A. A board of education of a public school district or a technology center school district, the board of regents of an institution within The Oklahoma State System of Higher Education, the governing board of a private post secondary educational institution, the Oklahoma State Regents for Higher Education, the State Board of Education or the State Board of Career and Technology Education shall not:

1. Require a vaccination against Coronavirus disease 2019 (COVID-19) as a condition of admittance to or attendance of the school or institution;

2. Require a vaccine passport as a condition of admittance to or attendance of the school or institution; or

3. Implement a mask mandate for students who have not been vaccinated against COVID-19.

B. As used in this section, "vaccine passport" means documentation that an individual has been vaccinated against COVID-19.

C. Nothing in this section shall be construed to apply to any public or private healthcare setting.

Section 1210-190 provides:

A. A board of education of a public school district or a technology center school district may only implement a mandate to wear a mask or any other medical device as provided in this subsection.

1. A board of education of a public school district or a technology center school district may only implement a mandate to wear a mask or any other medical device after consultation with the local county health department or city-county health department within the jurisdiction of where the board is located and when the jurisdiction of where the board is located is under a current state of emergency declared by the Governor.

2. The mandate shall explicitly list the purposes for the mandate.

3. The mandate shall reference the specific masks or medical devices that would meet the requirements of the mandate.

4. Any mandate to implement wearing a mask or any other medical device shall be reconsidered at each regularly scheduled board meeting. (Emphasis supplied.)

¶7 On August 12, 2021, the plaintiffs/appellees, the two doctors (doctors) and the two additional parents on behalf of their minor children (parents), along with the Oklahoma State Medical Association (OSMA) (collectively, doctors) filed a lawsuit in the District Court of the Oklahoma County against the State of Oklahoma, acting through the Legislature and the Governor, (collectively, the State). The doctors sought to enjoin the State from enforcing 70 O.S. Supp. 2021 Ch. 15, §1210-189 and 190.

¶8 They argued that the new additions to the legislation were unenforceable because:

1. They were an unconstitutional violation of equal protection and due process guaranteed by Okla. Const. art. 2, §7,

2. They were a violation of the Okla. Const. art. 5, §46 which prohibits the enactment of special laws regulating the affairs of school districts;

3. They were a violation of the Okla. Const. art. 5, §57 which requires every act of the Legislature to embrace only one section;

4. They were a violation of Oklahoma childen's right to a free education in a safe environment guaranteed by the Okla. Const. art. 1, §5.

The plaintiffs do not take issue with the minor modifications which were made to 70 O.S. 2021 Ch. 15, §1210-191.1 by Senate Bill 658.

¶9 On September 8, 2021, the trial court filed an order in which it granted, in part, the doctors' amended motion for a temporary injunction. The order states that:

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED, that Plaintiffs' Amended Motion for Temporary Injunction is granted in part. The State of Oklahoma and Governor Kevin Stitt are enjoined from enforcing certain sections of SB658 enacted in 2021 against any board of education of a public school district that has exemptions as described herein, specifically 70 O.S. §1210.18970 O.S. §1210.19070 O.S. §§1210.192

¶10 The State appealed on September 9, 2021. The doctors filed a counter-appeal on September 20, 2021. According to the doctors' counter petition in error, the result of the trial court's order is that public school districts must honor the absolute immunization "veto" by parents as to masking, but private schools are not similarly bound by such a requirement. Both parties filed motions to retain the appeal in this Court. We granted the State's motion to retain the appeal on September 15, 2021, and the doctors' motion to retain on September 23, 2021. After the expedited briefing cycle was completed, the cause was assigned on December 28, 2021, for an opinion.

TITLE 70 O.S. SUPP. §§1210-189 AND 190 ARE AN
UNCONSTITUTIONAL DELEGATION OF LEGISLATIVE AUTHORITY
WHICH VIOLATES THE OKLA. CONST. ART. 4 §1 ONLY TO THE 
EXTENT THAT THEY REQUIRE THE GOVERNOR TO DECLARE AN 
EMERGENCY BEFORE LOCAL SCHOOL DISTRICTS MAY MAKE 
DECISIONS REGARDING LOCAL HEALTH MATTERS. WE STRIKE 
THE OFFENDING PROVISIONS AND THE REMAINDER OF THE 
STATUTES REMAIN UPHELD.

¶11 The standard of review imposed for the issuance of a temporary injunction is whether the trial court abused its discretion or entered a decision against the evidence.

¶12 Title 70 O.S. Supp. 2021 §§189 and 190 do not prohibit public schools from requesting that students wear masks to school, nor do they prohibit students from wearing masks to school. Nor do they require vaccines for COVID or prohibit students from getting vaccinated. Rather, they prohibit a public school district from requiring a vaccination or proof of a vaccination before attending in-person school and from mandating masks for unvaccinated students, unless the district first consults with the local county health department or city-county health department within the jurisdiction of where the school board is located and then, only if the Governor declares a state of emergency in that same jurisdiction. If the Governor, as he has publicly indicated, will not declare a state of emergency due to COVID, then the statute acts as a state wide prohibition for masks for public schools.

¶13 The Oklahoma Governor has limited autonomous authority. The Court in Treat v. Stitt, 2020 OK 64473 P.3d 43

. . . The legislative branch sets the public policy of the State by enacting law not in conflict with the Constitution. Okla. Const. art. V, § 1. The Governor has a role in setting that policy through his function in the legislative process, but the Governor's primary role is in the faithful execution of the law. Okla. Const. art. VI, §§ 8 & 11.

¶14 Section 8 provides: "The Governor shall cause the laws of the State to be faithfully executed, and shall conduct in person or in such manner as may be prescribed by law, all intercourse and business of the State with other states and with the United States, and he shall be a conservator of the peace throughout the State." As far as the Governor's general authority goes, it is recognized that the drafters of the Oklahoma Constitution placed provisions to protect the people of the State of Oklahoma against excessive political and economic power.

¶15 Oklahoma's historical underpinnings were economically conservative. Fearing excessive power in the hands of one individual, the framers of the Oklahoma Constitution intentionally created a weak state chief executive. The Governor's authority is limited by the Constitution, because the Chief Executive may exercise only the power specifically granted by the Legislature. The Governor is without authority to exercise a discretion not validly and specifically granted by the statutory law and not within the power conferred upon the Chief Executive by the Constitution.

¶16 On the other hand, the Legislature has plenary authority to establish the public policy of the State and the Legislature has wide latitude in what it can do with public schools. The Oklahoma Constitution Preamble expressly recognizes that it was established to promote the mutual welfare of citizens.

¶17 The Legislature goes to great lengths and devotes great resources to curtail the spread of infectious diseases. The necessity of curtailing the spread of contagious diseases is also well-grounded and authorized by the Oklahoma Legislature through statutory authority.Fair School Finance Council of Oklahoma, Inc. v. State, 1987 OK 14746 P.2d 113570 O.S. 1981 §18-101Fair, supra at ¶45.

¶18 Public health codes "in a clear and compelling fashion" articulate a well-defined, firmly established, state public policy.

¶19 At the heart of the legislation in this matter is local control usurped or impeded by requiring the Governor to declare or not declare a state of emergency. The statutes remove the school board's authority to act independently and exercise the authority granted to the school board and it grants that authority to the Governor -- who has neither constitutional nor statutory authority over the operation of schools.

¶20 This is an impermissible delegation of authority. One branch of government may neither directly or indirectly control another branch -- nor subject it to coercive influence.

¶21 The statutes go far beyond a delegation of rulemaking authority. A school board is prohibited from deciding to implement any mask mandate, even after consulting local health department experts. Instead, that decision is controlled by a separate, independent action by the Governor. This allows the Governor to alter the implementation of the law without any legal authority to do so, even though the Governor does have the statutory authority, in limited circumstances, to issue executive orders declaring a state of emergency.

¶22 The question in this cause is whether the Governor's limited ability to declare an emergency can serve as the basis for a legitimate exercise of authority over public school decisionmaking. It cannot because the clause in the statutes does not merely grant the Governor the authority to declare an emergency, but instead, it requires the Governor to exercise legislative authority over school boards, and, as such, is impermissible.

¶23 In some circumstances an invalid portion of a statute may be stricken, while the remainder of the statute remains enforceable. This is the case when the valid provisions are separable, or are capable of being executed in accordance with the legislative intent of the statute as enacted.

CONCLUSION

¶24 The Okla. Const. art 4, §1 prohibits one branch of the government from exercising powers properly belonging to another branch.

APPEAL PREVIOUSLY RETAINED; 
ORDER OF THE DISTRICT COURT VACATED. 

DARBY, C.J., KAUGER, WINCHESTER, EDMONDSON, GURICH, ROWE, KUEHN, JJ., concur.

FISCHER, S.J., with whom COMBS, J., joins: concurs in part, dissents in part.

KANE, V.C.J., recused.

FOOTNOTES

Freeman v. State ex. rel. Dept. of Human Services, 2006 OK 71Freeman involved the question of whether a state employee could sue a state agency for failure to pay overtime under the Fair Labor Standards Act, 29 U.S.C. §201 et. seq. The court held that the State of Oklahoma was immune from suit by a citizen of Oklahoma against it brought in state court because the State of Oklahoma had not consented to suit under the Act. In Fair School Finance Council of Oklahoma, Inc. v. State, 1987 OK 114746 P.2d 1135Osage Nation v. Board of Commissioners of Osage County, 2017 OK 34394 P.3d 1224Osage, supra at ¶55, also notes that a suit for declaratory judgment is neither strictly legal nor equitable, but assumes the nature of the controversy at issue. Title 12 O.S. 2011 §1651

District courts may, in cases of actual controversy, determine rights, status, or other legal relations, including but not limited to a determination of the construction or validity of any foreign judgment or decree, deed, contract, trust, or other instrument or agreement or of any statute, municipal ordinance, or other governmental regulation, whether or not other relief is or could be claimed, except that no declaration shall be made concerning liability or nonliability for damages on account of alleged tortious injuries to persons or to property either before or after judgment or for compensation alleged to be due under workers' compensation laws for injuries to persons. The determination may be made either before or after there has been a breach of any legal duty or obligation, and it may be either affirmative or negative in form and effect; provided however, that a court may refuse to make a determination where the judgment, if rendered, would not terminate the controversy, or some part thereof, giving rise to the proceeding.

The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others.

Therefore, I, J. Kevin Stitt, Governor of the State of Oklahoma, pursuant to the power vested in me by Section 2 of Article VI of the Oklahoma Constitution, hereby declare and order the following:

1. There is hereby declared an emergency caused by the impending threat of COVID-19 to the people of this State and the public's peace, health, and safety. The counties included in this declaration are:

All 77 Oklahoma Counties

2. The State Emergency Operations Plan has been activated, and resources of all State departments and agencies available to meet this emergency are hereby committed to the reasonable extent necessary to prepare for and respond to COVID-19 and to protect the health and safety of the public. . .

pertinent part:

I, J. Kevin Stitt, Governor of the State of Oklahoma, pursuant to the power vested in my by Section 2 of Article VI of the Oklahoma Constitution hereby order:

Effective May 4, 2021, Second Amended Executive Order 202-07 is withdrawn and rescinded.. . ."

70 O.S. 2011 Ch. 15, §1210.192

Any minor child, through the parent, guardian, or legal custodian of the child, may submit to the health authority charged with the enforcement of the immunization laws of this state:

1. A certificate of a licensed physician as defined in Section 725.2 of Title 59 of the Oklahoma Statutes, stating that the physical condition of the child is such that immunization would endanger the life or health of the child; or

2. A written statement by the parent, guardian or legal custodian of the child objecting to immunization of the child; whereupon the child shall be exempt from the immunization laws of this state.

Title 70 O.S. 2011 Ch. 15, §1210.193

The immunizations will be administered by a licensed physician, someone under his direction, or public health department. If the parents or guardians are unable to pay, the State Department of Public Health shall provide, without charge, the immunization materials required by this act to such pupils. The parents, guardian or person having legal custody of any child may claim an exemption from the immunizations on medical, religious or personal grounds.

A. Any child afflicted with a contagious disease or head lice may be prohibited from attending a public, private, or parochial school until such time as he is free from the contagious disease or head lice.

B. Any child prohibited from attending school due to head lice shall present to the appropriate school authorities, before the child may reenter school, certification from a health professional as defined by Section 2601 of Title 63 of the Oklahoma Statutes or an authorized representative of the State Department of Health that the child is no longer afflicted with head lice.

C. School districts and county or city-county health departments may enter into agreements under the Interlocal Cooperation Act for the purpose of providing assistance to the school district by inspecting children who are returning to school after an absence due to head lice to ensure that the child is no longer afflicted with head lice.

D. If a school district and county or city-county health department has entered into an agreement as authorized in subsection C of this section, upon written authorization of the parent or guardian of a child, the county or city-county health department may provide treatment to the child for head lice.

70 O.S. 2011 Ch. 15, §1210.191

A. No minor child shall be admitted to any public, private, or parochial school operating in this state unless and until certification is presented to the appropriate school authorities from a licensed physician, or authorized representative of the State Department of Health, that such child has received or is in the process of receiving, immunizations against diphtheria, pertussis, tetanus, haemophilus influenzae type B (HIB), measles (rubeola), (rubella), poliomyelitis, varicella, and hepatitis A or is likely to be immune as a result of the disease.

B. Immunization tests required, and the manner and frequency of their administration, as prescribed by the State Board of Health, shall conform to recognized standard medical practices in the state. The State Department of Health shall supervise and secure the enforcement of the required immunization program. The State Department of Education and the governing boards of the school districts of this state shall render reasonable assistance to the State Department of Health in the enforcement of the provisions hereof.

C. The State Board of Health, by rule, may alter the list of immunizations required after notice and hearing. Any change in the list of immunizations required shall be submitted to the next regular session of the Legislature and such change shall remain in force and effect unless and until a concurrent resolution of disapproval is passed. Hearings shall be conducted by the State Board of Health, or such officer, agents or employees as the Board may designate for that purpose. The State Board of Health shall give appropriate notice of the proposed change in the list of immunizations required and of the time and place for hearing. The change shall become effective on a date fixed by the State Board of Health. Any change in the list of immunizations required may be amended or repealed in the same manner as provided for its adoption. Proceedings pursuant to this subsection shall be governed by the Administrative Procedures Act.

D. The State Department of Education and the governing boards of the school districts of this state shall provide for release to the Oklahoma Health Care Authority of the immunization records of school children covered under Title XIX or Title XXI of the federal Social Security Act who have not received the required immunizations at the appropriate time. The information received pursuant to such release shall be transmitted by the Oklahoma Health Care Authority to medical providers who provide services to such children pursuant to Title XIX or Title XXI to assist in their efforts to increase the rate of childhood immunizations pursuant to the requirements of the Early and Periodic Screening, Diagnosis and Treatment (EPSDT) services provisions. The provisions of this subsection shall not be construed to prohibit or affect the eligibility of any child to receive benefits pursuant to Title XIX or Title XXI of the Social Security Act or to require the immunization of any child if such child is exempt from immunization pursuant to Section 1210.192 of this title shall not be included in the information transmitted pursuant to this subsection.

. . . B. Immunizations required, and the manner and frequency of their administration, as prescribed by the State Commissioner of Health, shall conform to recognized standard medical practices in the state. The State Department of Health shall supervise and secure the enforcement of the required immunization program. The State Department of Education and the governing boards of the school districts of this state shall render reasonable assistance to the State Department of Health in the enforcement of the provisions hereof.

C. The Commissioner, by rule, may alter the list of immunizations required after notice and hearing. Any change in the list of immunizations required shall be submitted to the next regular session of the Legislature and such change shall remain in force and effect unless and until a concurrent resolution of disapproval is passed. Hearings shall be conducted by the Commissioner, or such officer, agents or employees as the Commissioner may designate for that purpose. The Commissioner shall give appropriate notice of the proposed change in the list of immunizations required and of the time and place for hearing. The change shall become effective on a date fixed by the Commissioner. Any change in the list of immunizations required may be amended or repealed in the same manner as provided for its adoption. Proceedings pursuant to this subsection shall be governed by the Administrative Procedures Act.. . .

E. The State Department of Education shall provide and ensure that each school district in this state provides, on the school district website and in any notice or publication provided to parents regarding immunization requests, the following information regarding immunization requirements for school attendance: "For school enrollment, a parent or guardian shall provide one of the following:

1. Current, up-to-date immunization records; or

2. A completed and signed exemption form."

No person shall be deprived of life, liberty, or property, without due process of law.

In Hendricks v. Jones, 2013 OK 71349 P.3d 531

¶8 The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution mandates no state "deny to any person within its jurisdiction the equal protection of the laws." The Oklahoma Constitution does not have an equivalent to the federal Equal Protection Clause; however, this Court has identified a functional equivalent in our due process section. Although not an absolute guarantee of equality of operation or application of state legislation, the Equal Protection Clause's purpose is to safeguard against arbitrary discrimination. (Footnotes omitted.)

§ 46. Local and special laws on certain subjects prohibited.

The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:

The creation, extension, or impairing of liens;

Regulating the affairs of counties, cities, towns, wards, or school districts; . . .

Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length: Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof.

Provisions shall be made for the establishment and maintenance of a system of public schools, which shall be open to all the children of the state and free from sectarian control; and said schools shall always be conducted in English: Provided, that nothing herein shall preclude the teaching of other languages in said public schools.

Fent v. Contingency Review Board, 2007 OK 27

Ranola Oil Co. v. Corporation Commission of Oklahoma, 1988 OK 28752 P.2d 1116

Collier v. Reese, 2009 OK 86Brown ex rel. Brown v. Association, 2005 OK 88125 P.3d 1219Sharp v. 251ST St. Landfill, Inc., 1996 OK 109925 P.2d 546State ex rel. Schulte v. Hallco Environmental, Inc., 1994 OK 138886 P.2d 99412 O.S. 2011 §952

b) The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof: . . .
2. An order that discharges, vacates or modifies or refuses to vacate or modify a provisional remedy which affects the substantial rights of a party; or grants, refuses, vacates, modifies or refuses to vacate or modify an injunction; grants or refuses a new trial; or vacates or refuses to vacate a final judgment; . . .

12 O.S. 2011 § 2202

A. This section governs only judicial notice of adjudicative facts.
B. A judicially noticed adjudicative fact shall not be subject to reasonable dispute in that it is either:
1. Generally known within the territorial jurisdiction of the trial court; or
2. Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
C. A court may take judicial notice, whether requested or not.
D. A court shall take judicial notice if requested by a party and supplied with the necessary information.
E. In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

In Ind. School Dist. #52 of Okla. Const. v. Hofmeister, 2020 OK 56473 P.3d 475

In federal court, judicial notice of fact may occur when the fact is not subject to reasonable dispute and it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Oklahoma statute has similar language. Some federal courts have stated a court may take judicial notice of an indisputably accurate fact on the world wide web (or internet), and public records and government documents available from reliable sources on the internet, such as websites run by governmental agencies may be used for the purpose of judicial notice. Some federal courts have also concluded public agency actions, factfinding, and decisions may be appropriate for judicial notice. . . .

The motion to strike is denied, we take judicial notice of the audit, and use it as cited herein.

Wentz v. Thomas, 1932 OK 63615 P.2d 65

Invoking the guidance of Almighty God, in order to secure and perpetuate the blessing of liberty; to secure just and rightful government; to promote our mutual welfare and happiness, we, the people of the State of Oklahoma, do ordain and establish this Constitution.

State ex rel. Dept. of Transp. v. Pile, 1979 OK 152603 P.2d 337Mustang Run Wild Project, LLC. v. Osage County Board of Adjustment, 2016 OK 113387 P.3d 333Indian Territory Illuminating Oil Co. V. Larkings, 1934 OK 12531 P.2d 608

Treat v. Stitt, 2020 OK 64473 P.3d 43

The Legislative authority of the State shall be vested in a Legislature, consisting of a Senate and a House of Representatives; but the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature.

63 O.S. 2011 §1-71363 O.S. 2011 §§ 1-81959 O.S. 2011 §567.8

Estes v. Conoco Phillips Co., 2008 OK 21184 P.3d 518Moore v. Warr Acres Nursing Center, 2016 OK 28Silver v. CPC-Sherwood Manor, Inc. 2004 OK 1

70 O.S. 2011 Ch. 15, §1210.191State Have Mandated Vaccinations Since Long Before COVID-19, Pew Research Enter, www.pewresearch.org/fact-tank/2021/10/8. In Zucht v. King, 260 U.S. 17443 S.Ct. 2467 L.Ed. 194 (1922), the United States Supreme Court stated that Jacobson, supra, "settled that it is within the police power of a state to provide for compulsory vaccination."

Okla. Educ. Ass'n v. State, 2007 OK 30158 P.3d 1058

Oklahoma Coalition for Reproductive Justice v. Cline, 2016 OK 17368 P.3d 1278

Thomas v. Henry, 2011 OK 53260 P.3d 1251Tulsa County Deputy Sheriff's Fraternal Order of Police, Lodge Number 188 v. Board of County Commissioners of Tulsa County, 2000 OK 2995 P.2d 1124

Oklahoma Coalition for Reproductive Justice v. Cline, see note 27, supra.

75 O.S. 2011 §11

In the construction of the statutes of this state, the following rules shall be observed:

1. For any act enacted on or after July 1, 1989, unless there is a provision in the act that the act or any portion thereof or the application of the act shall not be severable, the provisions of every act or application of the act shall be severable. If any provision or application of the act is found to be unconstitutional and void, the remaining provisions or applications of the act shall remain valid, unless the court finds:

a. the valid provisions or application of the act are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or

b. the remaining valid provisions or applications of the act, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

2. For acts enacted prior to July 1, 1989, whether or not such acts were enacted with an express provision for severability, it is the intent of the Oklahoma Legislature that the act or any portion of the act or application of the act shall be severable unless:

a. the construction of the provisions or application of the act would be inconsistent with the manifest intent of the Legislature;

b. the court finds the valid provisions of the act are so essentially and inseparably connected with and so dependent upon the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or

c. the court finds the remaining valid provisions standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

 

 

FISCHER, S.J., with whom COMBS, J., joins, concurring in part; dissenting in part.

¶1 The Plaintiffs challenge the constitutionality of two statutes, 70 O.S. Supp. 2021 §§ 1210.189

¶2 With respect to section 1210.190, I concur with the Majority. That statute contains an impermissible delegation of Legislative power to the Governor. When the offending provision is stricken, the remainder of the statue is enforceable.

¶3 However, there is no similar delegation of Legislative authority in section 1210.189, nor does that statute mention the Governor. Section 1210.189 concerns the authority of the governing body of any public school to require a vaccination for one disease, Coronavirus disease 2019, as a condition of admittance to school. But the Legislature has already specified the nine vaccinations which are required for school admission in a separate statute, 70 O.S. Supp. 2021 § 1210.191Id. A vaccination against Coronavirus disease 2019 is not listed nor is it required to attend school in Oklahoma.

¶4 Further, only the State Commissioner of Health "may alter the list of immunizations required . . . ." 70 O.S.2011 § 1210.19170 O.S.2011 § 5-117

¶5 In my view, severing the impermissible delegation to the Governor of Legislative power in section 1210.190 does not save section 1210.189, because section 1210.189 is a special law regulating public schools prohibited by Article 5, § 46 of the Oklahoma Constitution: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law . . . Regulating the management of public schools. . . ." Section 1210.191 specifies all of the vaccines required for all students attending every school in Oklahoma. In contrast, section 1210.189 addresses only one vaccine, the Coronavirus disease 2019 vaccine, and one group of students, those who attend a public school. "A statute is a special law when part of an entire class of similarly affected persons is segregated and targeted for different treatment." Beason v. I. E. Miller Services, Inc., 2019 OK 28441 P.3d 110770 O.S. Supp. 2021 § 1210.191

¶6 In addition, section 1210.189 conflicts with section 1210.190, the statute which the Majority holds is constitutional. For example, pursuant to 70 O.S.2011 § 1210.194

¶7 Nonetheless, section 1210.189(A)(3) would prohibit the school board from implementing such "a mask mandate for students who have not been vaccinated against COVID-19." Infected but unvaccinated students would either be prohibited from attending school pursuant to the board's authority in section 1201.194, or allowed to attend without wearing a mask. As a result, infected and vaccinated students who follow the board's mask mandate would be permitted to attend school while infected but unvaccinated students would be "segregated and targeted for different treatment." Beason v. I. E. Miller Services, Inc., 2019 OK 28

¶8 I my view section 1210.189 violates Article 5, § 46 of the Oklahoma Constitution. I respectfully dissent from that portion of the Majority Opinion holding that section 1210.89 is constitutional.