OSCN Found Document:INDEPENDENT SCHOOL DISTRICT NO. 12 v. STATE

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 INDEPENDENT SCHOOL DISTRICT NO. 12 v. STATE
2024 OK 39
Case Number: 121987
Decided: 06/11/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 39, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

INDEPENDENT SCHOOL DISTRICT NO. 12 OF OKLAHOMA COUNTY, commonly known as EDMOND PUBLIC SCHOOLS, Petitioner,
v.
STATE OF OKLAHOMA, ex rel. STATE BOARD OF EDUCATION, RYAN WALTERS, in his capacity as PRESIDENT OF THE STATE BOARD OF EDUCATION and STATE SUPERINTENDENT OF PUBLIC INSTRUCTION, and THE STATE DEPARTMENT OF EDUCATION, Respondents. 
APPLlCATION TO ASSUME ORIGINAL JURISDICTION AND PETITION FOR
WRIT OF PROHIBITION AND DECLARATORY AND INJUNCTIVE RELIEF

¶0 School district filed an application for the Supreme Court to assume original jurisdiction and issue extraordinary and declaratory relief to prevent enforcement of rules by the State Board of Education, State Department of Education, and Superintendent of Public Instruction. Respondents seek to use the rules in enforcement proceedings brought against the school district before the State Board. We assume original jurisdiction, in part, over the controversy. We deny respondents' motion for oral argument. We hold: (1) State statutes give a local school board power and a type of statutory discretion to supply books for a school library that meet local community standards, and (2) No statute gives the State Board of Education, State Department of Education, and Superintendent of Public Instruction the authority to supervise, examine, and control a local school board's exercise of this discretion when the local school board applies local community standards for books it supplies for a local school library.

ORIGINAL JURISDICTION ASSUMED IN PART; WRIT OF PROHIBITION ISSUED;
DECLARATORY AND INJUNCTIVE RELIEF DENIED
F. Andrew Fugitt and Justin C. Cliburn, The Center of Education Law, P.C., Oklahoma City, Oklahoma, for petitioner.
Jason A. Reese and Paul B. Cason, Goodwin/Lewis PLLC, Oklahoma City, Oklahoma, for respondents.
Anthony T. Childers, Oklahoma City, Oklahoma, for amicus curiae, Oklahoma State School Boards Association.
Andrea R. Kunkel, Oklahoma City, Oklahoma, for amicus curiae, Cooperative Council for Oklahoma School Administration.
EDMONDSON, J.
¶1 The Edmond School District, petitioner, sought extraordinary superintending and supervisory relief in this Court to prevent enforcement proceedings before the State School Board. The proceedings were based upon the presence of certain books in a school library maintained by the school district. We assume original jurisdiction on some, but not all, of petitioner's claims. We conclude 70 O.S.2021, §5-117 (A)(3) & (A)(7) give local school boards discretion to place books in a local school library, 70 O.S.Supp.2022, §11-201 gives guidance to local school boards exercising that discretion based upon local community standards, and no state statute creates a supervisory review by State officials to control the local school board's decision-making process. We issue a writ of prohibition to prevent additional enforcement proceedings against the school district when based upon respondents' objection to the presence of certain books in the local school library.
I. Controversy
¶2 The State Board of Education (Board or State Board) publicized proposed rules for school library media programs. The rules included prohibitions on pornographic and sexualized content for books and other media. The Board provided a period of time for comments and in March 2023 adopted the rules. The Board cited Okla. Const. Art. XIII, §5,
[1] and 70 O.S. §3-104 (A)(7) & (20)[2] for authority to adopt the rules.
¶3 The Board submitted the new rules to the Governor and the Legislature on March 30, 2023, as new proposed permanent rules for the State Department of Education. In response to a request for an Opinion by the Oklahoma Attorney General, an Opinion issued, Okla. Atty. Gen. Opn. 2023-3 (April 4, 2023), and stated the proposed rules were not based upon a specific grant of legislative authority, such was necessary for the Board to create these rules, and 70 O.S. § 3-104 relied on by the Board could not act as legislative authorization for the Board to create the rules.
¶4 The Legislature passed Senate Joint Resolution 22, and it was signed by the Governor. The Resolution did not expressly state either approval or disapproval of the State Board's new rules. The resolution first states approval of proposed permanent rules "except for" specific rules "submitted by the State Department of Education."
Section 1. All proposed permanent rules of Oklahoma state agencies filed on or before April 1, 2023, are hereby approved except for OAC 317:30-3-35; submitted by the Oklahoma Health Care Authority, and OAC 210:10-2-1, 210:10-2-2, 210:10-2-3, 210:10-2-4. 210:35-3-121, 210:35-3-121.1, 210:35-3-126, and 210:35-3-128, submitted by the State Department of Education. 
Then the resolution expressly states proposed rules of state agencies "are hereby disapproved" and the list of several state agencies does not include the State Department of Education.
¶5 The Governor issued a Declaration on June 23, 2023, and stated the proposed rules for the State Department of Education "were not subject to the joint resolution," and the Governor possessed statutory authorization pursuant to 75 O.S. §308.3, to approve these proposed rules as permanent rules for the State Department of Education. The Governor's Declaration also disapproved the proposed permanent rules for the Oklahoma Heal Care Authority that were listed in the Senate Joint Resolution.
¶6 The State Department of Education sent a letter to the Edmond Public Schools. The letter stated two specific books were in a school library available to students, the content of the two books violated the new rules, and recommended removing the books from the library. Edmond Public Schools requested a hearing before the State Board to appeal whether the books should be removed. The State Board set a date for hearing.
¶7 Two days before the date of the Board's scheduled hearing, Edmond Public Schools filed its request for extraordinary relief in this Court and also sought a stay of the Board's proceedings on the issue whether the two books should be removed from the school library. The Board, through counsel, agreed to stay proceedings until the resolution of the pending matter.
¶8 The arguments raised by petitioner are: (1) The State Board's authority to create rules must be exercised within boundaries set by the Legislature; and (2) No statute gives the State Board powers "to adopt and enforce library censorship." Petitioners assert these first two arguments are sufficient to show violations of Okla. Const. Art. IV, §1 (separation of powers); Art. V, § 1 (legislative authority is vested in the Legislature), Art. XIII, § 1 (Legislature required to establish and maintain public schools) and Art. XIII, §5 (the State Board of Education has powers and duties prescribed by law). Petitioner argues: (3) "[T]he Board assigned itself authority to adopt an enforcement and penalties provision" concerning libraries by a rule in the absence of statutory authority.
¶9 Petitioner also argues: (4) The Governor's actions in approving the rules did not comply with the Oklahoma's Administrative Procedures Act (75 O.S. §§250-323), including 75 O.S. §308.3 in this Act; (5) The approved rules exceed the scope of authority provided in specific statutes concerning the State Board, e.g., 70 O.S. §§ 3-104, 3-104.3, and 3-104.4; and (6) The State Board's rules are inconsistent with the Legislature's creation of 70 O.S. §11-201, and its provision stating library content should "be reflective of the community standards for the population the library media serves,"
[3] and the enforcement of this standard is for the local school board and not the State Board.
¶10 Respondents' response argues the controversy does not merit the Court assuming original jurisdiction. Respondents urge the circumstances are not extraordinary, no urgency for a decision is present, and this Court should not become a trier of fact concerning facts considered by the State Board in previous proceedings and potential facts concerning potential enforcement of the rules against a local school district. On the issues concerning petitioner's request for extraordinary relief, respondents argue: (1) The Board's rules complied with the Administrative Procedures Act; (2) The Governor could approve the Board's proposed rules because the Legislature neither approved nor disapproved the rules; (3) The subject nature of the rules in within the authority of the State Board to create; (4) The Attorney General's Opinion, 2023 OK AG 3, makes incorrect conclusions of law concerning the State Board's authority for these rules; and (5) The Attorney General's view that the State Board may not use 70 O.S. §3-104 as authority to create rules on various subjects will necessarily invalidate many rules created by the State Board.
¶11 Petitioner's Reply Brief argues assumption of original jurisdiction and issuance of extraordinary relief is proper. Petitioner also argues that respondents' response misrepresents the text of the Administrative Procedures Act, the State Board does not possess "boundless" rule-making authority, and the respondents' response "rewrites history to have the rules conform to a statute [70 O.S.Supp.2022 §11-201] heretofore not cited by any respondent."
¶12 The Oklahoma State School Boards Association and the Cooperative Council for Oklahoma School Administration each appear as an amicus curiae and each filed a statement in support of petitioner. The former amicus curiae argues that respondents give an impermissible and expansive meaning to 70 O.S. §3-104, when the Governor asserts power to create permanent administrative rules without both a review and approval by the Legislature then the Governor exercises an unconstitutional delegation of legislative authority, and the Legislature legally "disapproved" library media rules. The latter amicus curiae argues the rules conflict with 70 O.S. §11-201, and the rules increase the likelihood of litigation against school administrators. Respondents filed separate responses to each of the statements filed by amici curiae, and disagreed with their content.
[4]
II. Assumption of Original Jurisdiction
¶13 Petitioner requests the Court to assume original jurisdiction and grant extraordinary and declaratory relief. Respondents state the Court should assume original jurisdiction and provide them certain relief, or not assume original jurisdiction as an alternative. Their request to assume original jurisdiction is based upon an Opinion by the Attorney General, 2023 OK AG 3, and presents procedural and substantive issues concerning their request for the Court to either assume or not assume original jurisdiction.
¶14 Petitioner asserts the controversy is one of statewide application and importance concerning: (1) The constitutional role of the Legislature with respect to an Executive administrative agency creating a permanent administrative rule with legal force and effect
[5] by an act of the Governor when the Legislature has not expressly approved or disapproved a rule submitted for the Legislature's review;[6] (2) The statutory roles of the Legislature and Governor pursuant to the Oklahoma Administrative Procedures Act, 75 O.S.2021 §§ 250.1-323,[7] and (3) The authority of every local school board has in maintaining a school library in accordance with its own local standards pursuant to statutes such as 70 O.S. §11-201 and 70 O.S.2021 §5-117.
¶15 Petitioners also argue: (1) The respondents were notified by the Oklahoma Attorney General prior to their adoption by the Board that the proposed rules were outside the scope of the Board's statutory authority; (2) The Board then received legal advice from its own counsel that the legal opinion from the Oklahoma Attorney General was incorrect and "meaningless;" (3) The Board acted contrary to the advice of the Attorney General and adopted the proposed rules; (4) The Board submitted the rules to the Legislature for approval; (5) The rules were not properly approved by either the Legislature or the Governor; and (6) the Board improperly failed to comply with an Opinion by the Attorney General.
¶16 Respondents present the controversy as a dispute between a single public school district and the State Board of Education concerning whether administrative rules are properly applied to the local school district involving specific library books; and for this reason the issue has no urgent and extraordinary circumstance.
¶17 Respondents' response does conclude with a statement the Court should not assume original jurisdiction. However, their response also states the Court should assume original jurisdiction and determine the challenged rules "were validly promulgated under the established authority of the Board of Education and that 2023 OK AG 3 is not binding on Respondents."
[8]
¶18 Petitioner requests the Court to exercise supervisory control and issue a writ of prohibition to the Board based upon the Board's proceeding against a school district "to determine if District is in compliance with the Rules and assessing penalties." Prohibition is requested for "barring the Respondents from taking any action based upon the administrative rules...and enjoining the Respondents from enforcing the rules or retaliating against District."
¶19 Respondents state prohibition is "moot" because the Board has agreed to stay a hearing on this matter until completion of this Court proceeding. We disagree with respondent's assessment of mootness. Petitioner's request for prohibition is not merely to prevent a Board from scheduling a meeting, but to prevent the Board from enforcing certain rules with penalties against petitioner based upon evidence taken by the Board at its hearing whenever that meeting occurs.
¶20 Prohibition may issue to prevent the unauthorized exercise of a quasi-judicial power. Quasi-judicial power includes an administrative board or officer empowered to investigate facts, weigh evidence, draw conclusions as a basis for official actions, and exercise discretion of a judicial nature.
[9] The "Notice of Joint Stipulation to Stay Proceedings and Motion to Strike Hearing" filed by the opposing parties includes a characterization of the proceeding before the State Board as "enforcement proceedings against the District" and based on the specific rules challenged herein. (Emphasis added). This Notice and accompanying statements by the parties in their filings show the nature of the Board's proceeding as one investigating facts and exercising a quasi-judicial discretion concerning a library maintained by the Edmond School District.
¶21 A petitioner and respondent may join in a request for the court to assume original superintending
[10] or supervisory jurisdiction.[11] Whether the Court exercises supervisory or superintending original jurisdiction is a discretionary decision[12] based upon the Court's assessment of several factors,[13] and the Court must determine whether original jurisdiction is appropriate regardless to a joint request. Historically, when a respondent requested both assumption of original jurisdiction and affirmative substantive relief, a respondent filed its own application to assume original jurisdiction and petition for an extraordinary writ or declaratory relief.[14] A request by the State Board for the Court to grant this affirmative writ relief to respondent and against petitioner was made by a statement in respondent's response and supporting brief, and is not a formal request for assumption of original jurisdiction and declaratory relief.[15]
¶22 The Court considers many circumstances when exercising discretion to assume original jurisdiction, and assuming jurisdiction is usually based upon the combination of more than one circumstance. Some examples of these circumstances include the Court assuming jurisdiction to clarify a new statute or a new legal procedure,[16] to decide a matter of first impression,[17] examine whether the controverted issue is likely to be repeated[18] with an adjudication to preserve judicial economy,[19] if the controversy involves proper legislative procedure,[20] the cost of protracted litigation impacting the public purse making the remedy by protracted litigation economically inadequate,[21] and if the issue is publici juris, i.e., a matter affecting the community at large, when combined with a pressing need for a judicial determination based upon the circumstances.[22] Of course, the Court may assume jurisdiction to determine if a state board is complying with state statutes or the Oklahoma Constitution,[23] but our opinions show our assumption of original jurisdiction is not designed to usurp concurrent jurisdiction of District Courts or the usual and ordinary legal remedies, including appeal and administrative proceedings, that are available and adequate for the controversy.[24] The Court does not assume original jurisdiction for extraordinary relief merely because a dispute exists between two state agencies.[25]
¶23 An Opinion of the Attorney General may involve a publici juris issue of statewide concern.[26] A publici juris issue may arise because of a serious conflict between government agencies.[27] Although with the exception of an Attorney General's opinion that an act of the legislature is unconstitutional, an Attorney General's opinion is usually binding upon the state officials whom it affects, and public officers have the duty to follow Attorney General opinions until they are judicially relieved of compliance.[28] Respondents appear to recognize that 2023 OK AG 3 conflicts with respondents' rules due to their request for the Court to hold 2023 OK AG 3 as legally incorrect.
¶24 The parties' arguments present the controversy as one of statewide concern involving the State Board's authority for statewide administrative rules contrary to a formal opinion by the Attorney General, the State Board's resistance to this opinion, a challenge to the Board's rules by a local school district based upon its construction of a recently enacted statute specifying legislative procedure and claims based upon the Oklahoma Constitution. Our review of the controversy indicates it must be adjudicated upon a single ground raised by the parties, but with a narrower scope of effect for the adjudication than the adjudication sought by both petitioner and respondent.
¶25 The original jurisdiction of the Supreme Court "shall extend to a general superintending control over all inferior courts and all Agencies, Commissions and Boards created by law." Okla. Const. Art. VII, § 4. The Supreme Court possesses supervisory jurisdiction over inferior State courts and tribunals when they exercise a judicial and quasi-judicial power, and the Court may issue supervisory writs as one aspect of its supervisory jurisdiction.
[29]
¶26 This dispute involves an issue of first impression involving a subject of statewide concern, that is, whether the State Board of Education, State Department of Education, and State Superintendent of Public Instruction may control the selection of supplemental books and educational materials selected by every local school board when these local boards place materials in their local school libraries. This matter involves a first impression issue for construing a statute and recently created administrative rules. The fiscal purse of a school district should not be harmed by the burden of continued administrative and other legal proceedings if assuming original jurisdiction may avoid the necessity of additional proceedings. We assume original jurisdiction. Okla. Const. Art. VII, §4. We deny respondents' motion for oral argument due to the nature of the arguments presented by all parties in their briefs and the limited scope of original jurisdiction assumed herein.
¶27 The Edmond School District challenges an exercise of a quasi-judicial power. The State Board, the State Department of Education, and the State Superintendent of Public Instruction assert they may supervise in an enforcement proceeding whether a local school board is making decisions in accordance with local community standards. Respondents also appear to be asserting that they, and not the local school board, may determine the proper content for books in a local school district's library, and hold a local school district legally accountable for improper books in the school district's library by means of an enforcement proceeding before the State Board.
¶28 We conclude a local school board possesses statutory authority to maintain and control its local school library, and one aspect of this control includes discretionary authority for providing supplemental educational books and instructional material deemed appropriate by the local school board in accordance with local community standards.
[30]
¶29 We issue a writ of prohibition to the State Board of Education, State Department of Education, and the State Superintendent of Public Instruction, and direct them, both collectively and individually, to take the necessary steps to dismiss the proceedings brought against the Edmond School District to enforce OAC 210:10-2-1, 210:10-2-2, 210:10-2-3, 210:10-2-4. 210:35-3-121, 210:35-3-121.1, 210:35-3-126, and 210:35-3-128, State Department of Education Rules,[31] and direct respondents to dismiss the enforcement proceeding seeking to review the Edmond School District's selection of books the District has placed in one or more of its school libraries. Petitioner's request for declaratory and injunctive relief is denied.[32]
III. Local School Board and State Respondents
¶30 The Legislature establishes and maintains a system of free public schools wherein all the children of the State may be educated.
[33] The supervision of instruction in the public schools is vested in the State Board "whose powers and duties shall be prescribed by law."[34] The Legislature determines public policy by statutory enactment and this statutory policy is followed by both the State Board of Education, and a local school district pursuant to the extent of supervision possessed by the State Board in accordance with law.[35] Statutory authority given to the State Board includes an implied power when the implied power is necessary for the due and efficient exercise of the express statutory power.[36]
¶31 Statutory authority given to a local school board includes an implied power when the implied power is necessary for the due and efficient exercise of the express statutory power given by the Legislature to the local board.[37] Historically, when a board of education in an independent school district exercised a discretion and acted within the limits of its statutory grant of authority, then the board's discretion could not be interfered with unless there was a clear abuse of discretion.[38] Of course, a local school board may not adopt a policy contrary to a state statute.[39]
¶32 In a controversy of this nature we must start our analysis with whether the Legislature has expressed its policy by a statute. The Legislature has stated the following
A. The board of education of each school district shall have power to:...

3. Maintain and operate a complete public school system of such character as the board of education shall deem best suited to the needs of the school district;...
7. Purchase, construct or rent, and operate and maintain, classrooms, libraries, auditoriums, gymnasiums, stadiums, recreation places and playgrounds, teacherages, school bus garages, laboratories, administration buildings, and other schoolhouses and school buildings, and acquire sites and equipment for the operation of public schools or conversion schools;

70 O.S.2021 §5-117 (A)(3) & (A)(7) (emphasis added). In the context of a statutory grant of authority to the State Board by a different statute we previously explained the term "shall" is "ordinarily interpreted as a command or mandate,"
[40] and we find it with no less mandatory effect in this instance when applied to the power of a local board of education in the phrase "shall have power." This power expressly includes the exercise of a discretion possessed by the local board to: "maintain and operate . . . as the board of education shall deem best suited to the needs of the school district." This operation and maintenance by the local board of education expressly includes "libraries." This express mandatory power includes implied powers necessary for the due and efficient exercise of the express statutory power. Board of Education of City of Oklahoma City v. Cloudman, supra.
¶33 The Legislature has also provided statutory guidance for this discretion excised by the local board for creation and maintenance of a local school library.
As school library media center resources are finite, the library media program shall be reflective of the community standards for the population the library media center serves when acquiring an age-appropriate collection of print materials, nonprint materials, multimedia resources, equipment, and supplies adequate in quality and quantity to meet the needs of students in all areas of the school library media program.
70 O.S.Supp.2022 § 11-201. The language states the resource or materials "shall be reflective of the community standards for the population the library media center serves." The language refers to an exercise of discretion where the decision-maker determines the nature of appropriate content for the particular community the local school library serves. This plain language clearly anticipates local school boards making assessments for library content based upon the needs of their particular students, and recognizes the educational needs for library resources in one community may be different from the needs in another community.
[41] The purpose of particularized assessments of educational needs for individual communities is accomplished by the local boards of education in those individual communities.
¶34 The State Board, State Dept. of Education, and Superintendent of Public Instruction do not rely on express language in a statute giving them authority over a local school district's library in support of applying their administrative rules. The State Board relies on 70 O.S. §3-104 (A)(7) & (20), which states in part as follows.
A. The supervision of the public school system of Oklahoma shall be vested in the State Board of Education and, subject to limitations otherwise provided by law, the State Board of Education shall:...
7. Promulgate rules governing the classification, inspection, supervision, and accrediting of all public nursery, kindergarten, elementary and secondary schools... 
20. Have authority and is hereby required to perform all duties necessary to the administration of the public school system in Oklahoma as specified in the Oklahoma School Code; and, in addition thereto, those duties not specifically mentioned herein if not delegated by law to any other agency or official;....
This language does not expressly refer to libraries. It contains a general grant of supervisory authority possessed by the State Board to promulgate rules, and perform all duties necessary to the administration of the public school system in Oklahoma. This same argument appears by their reliance on Okla. Const. Art. XIII, §5, and its designation of the supervisory role of the State Board.
[42]
¶35 A specific grant of statutory authority to one entity usually controls a general grant of authority to another when the two statutes are in conflict.[43] One construction showing no statutory conflict is merely this: Specific statutes stating the powers of a local board do not necessarily conflict with those statutes stating the general supervisory role of the State Board; because a statutory grant of a general supervisory role is not, by itself, a negation or infringement upon a specific grant of power to the supervised entity. For example, the fact that the State Department of Education, through the State Board of Education, has a statutory supervisory role with the Board responsible for apportioning and disbursing annual appropriations to school districts; does not mean the Board by virtue of this supervisory role is insulated from legal liability when it fails to apportion the correct statutory amount to a local school district.[44] A general supervisory role, by itself, does not give respondents authority to strip a local school board of its statutory control over a specific matter.
¶36 Respondents appear to recognize this issue and argue in the alternative that their administrative rules may be viewed as fulfilling the legislative intent expressed in 70 O.S.Supp.2022 § 11-201. The Edmond School District objects and argues 70 O.S. §11-201 was not used as authority for promulgating the rules by the Board, and in this proceeding this is the first time respondents have attempted to use this statute as support for the Board's rules.
¶37 Generally, administrative rules are created to carry out and effectuate the Legislature's expressed Will,
[45] an administrative rule-making authority is not a self-generating or bootstrapping procedure for increasing the agency's statutory power and authority,[46] and the Legislature has included several statutes in Title 70 giving express authority to the State Board and Department of Education to create rules or take a specific supervisory role in specific circumstances.[47] But 70 O.S. §11-201 contains no direction for the State Board and its requirement for application of local community standards is more consistent with the local school board exercising this power. The State Board appears to argue that its general supervisory role in education matters is itself sufficient authority for the State Board to "supervise" any discretionary decision statutorily given to a local school board with a proceeding before the State Board to examine and correct the local school board's decision in an enforcement proceeding. We disagree. Adams v. Professional Practices Comm'n, supra.
¶38 Respondents' argument is not persuasive. The Legislature stated the view that local control of a discretionary matter by a local school board is preferable. For example, in Ritter v. State, 2022 OK 73, 520 P.3d 370, we quoted from Fair School Finance Council of Oklahoma, Inc. v. State, 1987 OK 114, ¶45, 746 P.2d 1135, and its reliance on 70 O.S.1981 §18-101: "The school system is designed to strengthen and encourage local responsibility for control of public education, with the maximum public autonomy and responsibility remaining at the local level." Ritter, 2022 OK 73, ¶17, 520 P.3d at 380. We recognize the Legislature's long-held public policy.
¶39 The nature of the enforcement proceedings against the Edmond School District is to control the discretion of the District's selection of books placed in a school library when 70 O.S.2021 §5-117 (A)(3) & (A)(7) combined with 70 O.S. §11-201 vest that discretion in a local school board, and no other statute conflicts with this vesting of local discretion. No statute gives the State Board of Education, State Department of Education, and Superintendent of Public Instruction the authority to overrule a local school board's exercise of discretion in applying its local community standards for books in a local school library.
IV. Court Declines to Assume Original Jurisdiction on Additional Claims
¶40 The school district also challenges the Governor's approval of the rules. The parties dispute the meaning of language in 75 O.S.2021 §§ 308, 308.3. In 75 O.S.2021 § 308.3, when a rule submitted for legislative review is "not subject to" the Legislature's joint resolution the Governor may approve or disapprove the rule.
[48] The State Board argues its rules may be approved or disapproved, and while the Board's rules were mentioned in the joint resolution, respondents argue they were not "subject to" the Legislature's resolution because the rules were neither approved nor disapproved. The rules were thereafter approved by the Governor. The school district's argument is that a joint resolution may approve a rule, disapprove a rule, or take any such other direction or mandate regarding the rule deemed necessary (75 O.S.2021 § 308(D)), and for the school district this latter category includes a joint resolution mentioning a rule without a legislative approval or disapproval. The school district argues this latter category fulfills the requirement of a rule being "subject to" a joint resolution and thus outside the scope of the Governor's authority to either approve or disapprove.
¶41 Due to our holding and adjudication issuing a writ herein we need not address this argument and its response.
[49] We decline to assume original jurisdiction to analyze the school district's claims based upon 75 O.S. §§308, 308.3, and other related statutes for the same reason.
¶42 The school district makes an argument based upon provisions of the Oklahoma Constitution. The Court may decline to decide a constitutional issue presented by the parties if a decision on the issue is not necessary to resolve the controversy.
[50] We decline to assume original jurisdiction to analyze the school district's constitutional claims.
¶43 The respondents have a statement in their brief requesting our assessment of the scope and effect of Okla. Atty. Gen. Opn. 2023-3 (April 4, 2023). We discussed herein a lack of authorization for the Board in 70 O.S.2021, §3-104 (A)(7) & (20), and Okla. Const. Art. XIII, §5, to create rules that alter the statutory local control given to a local board of education concerning a school library. We do not rely upon the disputed Attorney General Opinion for our holdings herein. We decline to assume original jurisdiction to determine the legal correctness, scope, or effect of Okla. Atty. Gen. Opn. 2023-3 (April 4, 2023).
V. Conclusion
¶44 We assume original jurisdiction to decide first impression issues concerning local school board's discretionary statutory control over a school library maintained by the board.
¶45 We conclude a local school board possesses statutory authority to maintain and control its local school library, and one aspect of this control includes discretionary selection for providing supplemental educational books and instructional material deemed appropriate by the local school board in compliance with state statutes. No statute gives the State Board of Education, State Department of Education, and Superintendent of Public Instruction the authority to overrule a local school board's exercise of discretion in applying its local community standards for books in a local school library.
¶46 We conclude the State Board of Education is attempting to exercise unauthorized quasi-judicial authority in enforcement proceedings before the Board that involve the Edmond School District's selection of books for its school library.
¶47 We decline to assume original jurisdiction to: (1) analyze the school district's claims based upon 75 O.S. §§308, 308.3, and related statutes; (2) address constitutional claims raised by petitioner; or (3) determine the legal correctness, scope, or effect of Okla. Atty. Gen. Opn. 2023-3 (April 4, 2023).
¶48 We issue a writ of prohibition to the State Board of Education, State Department of Education, and the State Superintendent of Public Instruction, and direct them, both collectively and individually, to take the necessary steps to dismiss the proceedings brought against the Edmond School District to enforce OAC 210:10-2-1, 210:10-2-2, 210:10-2-3, 210:10-2-4. 210:35-3-121, 210:35-3-121.1, 210:35-3-126, and 210:35-3-128, State Department of Education Rules, and direct respondents to dismiss their enforcement proceeding reviewing the Edmond School District's selection of books the District has placed in one or more of its school libraries. Petitioner's request for declaratory and injunctive relief is denied.
¶49 ALL JUSTICES CONCUR.
FOOTNOTES
[1] Okla. Const. Art. XIII, §5: The supervision of instruction in the public schools shall be vested in a Board of Education, whose powers and duties shall be prescribed by law. The Superintendent of Public Instruction shall be President of the Board. Until otherwise provided by law, the Governor, Secretary of State, and Attorney General shall be ex-officio members, and with the Superintendent, compose said Board of Education.
[2] 70 O.S. 2021 §3-104(A)(7) & (20) state in part:
A. The supervision of the public school system of Oklahoma shall be vested in the State Board of Education and, subject to limitations otherwise provided by law, the State Board of Education shall:...
7. Promulgate rules governing the classification, inspection, supervision, and accrediting of all public nursery, kindergarten, elementary and secondary schools...
20. Have authority and is hereby required to perform all duties necessary to the administration of the public school system in Oklahoma as specified in the Oklahoma School Code; and, in addition thereto, those duties not specifically mentioned herein if not delegated by law to any other agency or official;....
[3] 70 O.S.Supp.2022, §11-201: As school library media center resources are finite, the library media program shall be reflective of the community standards for the population the library media center serves when acquiring an age-appropriate collection of print materials, nonprint materials, multimedia resources, equipment, and supplies adequate in quality and quantity to meet the needs of students in all areas of the school library media program.
[4] On June 6, 2024, AFA Action, Inc. filed a motion for leave to file an amicus curiae brief and as an amicus curiae a motion to associate counsel admitted to practice law in the State of Mississippi. Amicus curiae practice and procedure in an original jurisdiction proceeding is governed by Oklahoma Supreme Court Rules 1.191(h) and 1.12. The disposition of a pending original action shall not be delayed by a motion to appear as amicus curiae. Okla. Sup. Ct. R. 1.12(d)(2). We note the parties completed briefing the matter with briefs filed on March 25, 2024. The motions to appear as amicus curiae and associate counsel are denied without prejudice to further motions during rehearing stage, if any, provided such motions are in compliance with this Court's Rules.
[5] Bertrand v. Laura Dester Center, 2013 OK 18, ¶14, 300 P.3d 1188, 1192 ("Administrative rules and court rules are valid expressions of lawmaking powers having the force and effect of law.").
[6] Okla. Const. Art. V, §1: The Legislative authority of the State shall be vested in a Legislature, consisting of a Senate and a House of Representatives; but the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature.
Okla. Const. Art. IV, §1: The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others.
[7] 75 O.S.2021, § 250: A. This section and Sections 250.1 through 323 of this title shall be known and may be cited as the 'Administrative Procedures Act.' B. All statutes hereinafter enacted and codified as part of the Administrative Procedures Act shall be considered and deemed part of the Administrative Procedures Act.
[8] An implied argument concerns whether an administrative rule may grant new and additional authority by mere legislative approval pursuant to a joint resolution if there were no conflicting statutes vesting that new power in a different entity, i.e., if no power or authority was given by statute to local school boards over libraries could the State Board obtain the power by a mere legislative rule-approval process or a Governor's proclamation in the absence of an actual legislative review. The argument is hypothetical for this controversy due to statutes giving a local school board power concerning its school libraries, and the issue need not be addressed. Dank v. Benson, 2000 OK 40, ¶9, 5 P.3d 1088, 1091-92 (Court does not address hypothetical issues when exercising original jurisdiction).
[9] Oklahoma State Med. Ass'n v. Corbett, 2021 OK 30, n.2, 489 P.3d 1005, 1006 (quoting Umholtz v. City of Tulsa, 1977 OK 98, ¶6, 565 P.2d 15, 18).
[10] Petitioner appears to seek supervisory jurisdiction over an inferior tribunal as well as superintending original jurisdiction over an administrative body attempting to exercise a type of quasi-judicial power outside of the scope of a typical administrative individual proceeding. The controversy is an exercise of an administrative quasi-judicial power with potential penalties for a local school district and within both the Court's supervisory and superintending original jurisdiction. Dutton v. City of Midwest City, 2015 OK 51, ¶27, 353 P.3d 532, 545-46 (discussing distinction between supervisory and superintending jurisdiction).
[11] See, e.g., State ex rel. Oklahoma Tax Comm'n v. Mourer, 1979 OK 92, 596 P.2d 882, 884 (parties joined in seeking assumption of original jurisdiction but requested different and contrary substantive relief); Halstead v. McHendry, 1977 OK 131, 566 P.2d 134, 136 (petitioner and respondents joined in requesting assumption of original jurisdiction and requested writ was denied on "the sole issue with which petitioner has presented the Court"); Looney v. Leeper, 1930 OK 455, 292 P. 365, 367 (petitioners and respondents joined in a request for the Court to assume original jurisdiction to determine if a senate joint resolution was in effect).
[12] A court's exercise of judicial discretion does not refer to an arbitrary decision by a judicial officer; but rather, a decision based upon reason, all applicable legal principles, and the judicially cognizable facts. Christian v. Gray, 2003 OK 10, ¶ 44, 65 P.3d 591, 609 (an abuse of judicial discretion occurs when a court's order is exercised to an end or purpose not justified by, and clearly against, reason and evidence); Boston v. Buchanan, 2003 OK 114, n.9, 89 P.3d 1034, 1044 (sound judicial discretion exercised by a judge controlling the docket of a court "does not mean an arbitrary control").
[13] See, e.g., Grimes v. City of Oklahoma City, 2002 OK 47, ¶2, 49 P.3d 719, 722 ("only in rare circumstances does this Court assume original jurisdiction to grant a form of declaratory relief"); State ex rel. Okla. Bar Ass'n v. Mothershed, 2011 OK 84, ¶78, 264 P.3d 1197, 1226 (when Court's original jurisdiction in a matter is concurrent with another tribunal, such as a district court, the Court's decision to exercise original jurisdiction is discretionary based upon the Court's assessment of the applicable law and all circumstances); Dutton v. City of Midwest City, 2015 OK 51, ¶27, 353 P.3d 532, 546 ("There is no clear legal right to a writ of superintending control and the issuance of such a writ is in the discretion of the Court."); Miller Dollarhide, P.C. v. Tal, 2006 OK 27, ¶¶8-9, 174 P.3d 559, 563 ("While art. 7 § 4 authorizes us to assume original jurisdiction in certain cases, the exercise of original jurisdiction is purely discretionary.").
[14] See, e.g., State ex rel. Robedeaux v. Johnson, 1966 OK 157, 418 P.2d 337 (writ granted on respondent's cross-petition for extraordinary writ); Harden v. Dist. Court of Tulsa Cnty., 1935 OK 1184, 53 P.2d 247 (petitioner's and respondent's applications to assume and petitions for prohibition consolidated to determine proper court exercising jurisdiction with issuance of writ granted to one court and denied to another); cf. Breedlove v. Tulsa County Court, 1935 OK 1101, 58 P.2d 305, 307 (Court determined which of two courts should exercise jurisdiction and did not issue a writ when no request by respondent was made for issuance to the court erroneously exercising jurisdiction, but Supreme Court stated "doubtless" the court erroneously exercising jurisdiction would "take appropriate action to relieve itself of further jurisdiction.").
[15] Townsend v. York, 1974 OK 121, 527 P.2d 594, 596 (original jurisdiction extraordinary relief requested in respondent's brief "is not before the Court").
[16] Hines v. Clendenning, 1970 OK 28, 465 P.2d 460, 461 (assumed jurisdiction due to the public nature of the controversy and new statutes); Orthopedic Clinic v. Jennings, 1971 OK 16, 481 P.2d 139, 140 (jurisdiction assumed because new procedural questions were presented involving vacating judgments and appeals).
[17] See, e.g., Jackson Cnty. Emergency Med. Serv. Dist. v. Kirkland, 2024 OK 4, ¶11, 543 P.3d 1219, 1222 ("We assumed original jurisdiction to address the first impression issues by opinion."); Vaughan v. Graves, 2012 OK 113, ¶8, 291 P.3d 623, 625 ("Court assumes original jurisdiction to address an important issue of first impression concerning the requirements of registration of foreign judgments"); Kelley v. Kelley, 2007 OK 100, ¶0, 175 P.3d 400, 401-02 ("We assume original jurisdiction to address a single matter of first impression involving parents' fundamental rights").
[18] Sanders v. Followell, 1977 OK 143, 567 P.2d 84, 86 ("The matter presented is publici juris, and of immediate concern to the orderly administration of justice. It is a problem which has the potential for repeated recurrence. Any postponement in clarification of the statutory language will only confuse the issue.").
[19] Scruggs v. Edwards, 2007 OK 6, ¶5, 154 P.3d 1257, 1260 ("assuming original jurisdiction serves the interests of judicial economy").
[20] See, e.g., State ex rel. Wiseman v. Oklahoma Bd. of Corrections, 1978 OK 158, 614 P.2d 551, 552 (petitioner sought compliance of Board with bill passed by House and Senate and signed by Governor, with the exception of one provision thereof which the Governor had vetoed), overruled in part, Johnson v. Walters, 1991 OK 107, 819 P.2d 694, 699; Draper v. State, 1980 OK 117, 621 P.2d 1142 (members of the Legislature sought writ involving the constitutionality of an appropriations bill); Regents of State Univ. v. Trapp, 1911 OK 62, 113 P. 910 (bill was presented to Governor less than five days before the adjournment of the Legislature, approval of the whole bill was necessary within 15 days after the Legislature's adjournment in order for bill to become law and Governor was without authority to approve bill in part and disapprove bill in part).
[21] Ethics Comm'n v. Keating, 1998 OK 36, ¶ 6, 958 P.2d 1250, explaining, Board of Cnty. Comm'rs of Harmon Cnty. v. Keen, 1937 OK 286, 153 P.2d 483; Atchison T. & S. F. Ry. Co. v. Love, 1911 OK 352, 119 P. 207.
[22] Rocket Properties, LLC v. LaFortune, 2022 OK 5, ¶1, 502 P.3d 1112, 1113 ("the Court may assume jurisdiction in a publici juris controversy where there is an urgency and need for a judicial determination") (citing Fent v. Contingency Review Bd., 2007 OK 27, ¶11, 163 P.3d 512); cf. State ex rel. Freeling v. Lyon, 1917 OK 229, 165 P. 419, 420 ("[w]e agree with counsel that this court should not grant the writ unless some interest of the public is involved...By 'publici juris,' we understand, is meant 'of public right.' The word 'public,' in this sense, means "pertaining to the people, or affecting the community at large").
[23] See, e.g., State ex rel. Haning v. Department of Public Welfare, 1952 OK 229, 245 P.2d 452; State ex rel. Poulos v. State Bd. of Equalization, 1982 OK 68, 646 P.2d 1269; State ex rel. Poulos v. State Bd. of Equalization, 1976 OK 41, 552 P.2d 1138; State ex rel. Poulos v. State Bd. of Equalization, 1975 OK 60, 552 P.2d 1134.
[24] See, e.g., Keating v. Johnson, 1996 OK 61, ¶11, 918 P.2d 51, 56 ("'The original jurisdiction of the Supreme Court, when concurrent with that of the district court, is intended primarily as a stand by service which it will exercise only when, from the exigencies of the case, great injury will be done by its refusal so to do'...[and when] we have assumed jurisdiction of original actions to rule on the constitutionality of legislative acts, our basis for doing so was a general public need for a speedy determination of the constitutional question") (quoting Kitchens v. McGowen, 1972 OK 140, 503 P.2d 218 (Court Syllabus)) (explanatory phrase added and material omitted); Watchorn Basin Ass'n v. Oklahoma Gas & Elec. Co., 1974 OK 27, 525 P.2d 1357, 1359 ("prohibition being an extraordinary writ, resort to it cannot be had when the ordinary and usual remedies are available, and the writ cannot take the place of, or be substituted for, appeal"); Maree v. Neuwirth, 2016 OK 62, ¶6, 374 P.3d 750, 752 (mandamus will not issue when a party has a plain and adequate remedy in the ordinary course of the law).
[25] Ethics Commission v. Keating, 1998 OK 36, ¶ 7, 958 P.2d 1250 (citing Keating v. Johnson, 1996 OK 61, 918 P.2d 51); Breeden v. Nigh, 1968 OK 88, 441 P.2d 981.
[26] See, e.g., Draper v. State, 1980 OK 117, 621 P.2d 1142, 1145, (opinions addressing whether an appropriations bill was unconstitutional); Oklahoma Ass'n of Municipal Attorneys v. State, 1978 OK 59, 577 P.2d 1310, 1312, (opinion addressing open meeting laws); State ex rel. York v. Turpen, 1984 OK 26, 681 P.2d 763, 764-765, (opinion involving Police & Firefighters' Retirement & Pension System).
[27] Dutton v. City of Midwest City, 2015 OK 51, ¶27, & n.56, 353 P.3d 532, 546 (citing Ethics Comm'n v. Cullison, 1993 OK 37, 850 P.2d 1069, 1073).
[28] State ex rel. Fent v. State ex rel. Okla. Water Res. Bd., 2003 OK 29, ¶16, 66 P.3d 432, 441.
[29] See, e.g., Gaylord Entertainment Co. v. Thompson, 1998 OK 30, ¶6, 958 P.2d 128, 136 ("A prerogative writ that may be granted in the exercise of this court's supervisory control over inferior courts, prohibition will lie to arrest unauthorized or excessive use of judicial force."); Macy v. Oklahoma City Sch. Dist. No. 89, 1998 OK 58, ¶13, 961 P.2d 804, 807 ("No exercise of judicial or quasi-judicial power by a state entity in an election controversy is beyond this Court's superintending jurisdiction to review by the appropriate extraordinary writ."); Watchorn Basin Ass'n v. Oklahoma Gas & Elec. Co., 1974 OK 27, 525 P.2d 1357, 1359 (when the challenged action of the agency, commission, or board created by law is "quasi-judicial, rather than ministerial, and the public has an interest, or this Court's refusal to take jurisdiction would result in a practical denial of justice, our power to grant such a[n] [extraordinary] writ [to the agency, board or commission] is beyond question") (quoting Heartsill v. County Election Bd., 1958 OK 138, 326 P.2d 782, 786) (explanatory phrasing added).
[30] This proceeding does not involve the State Textbook Committee or its selection of textbooks used by students. See, e.g., 70 O.S.2021, §16-102(A) ("...the State Textbook Committee shall meet to select textbooks for subjects taught in the public schools of the state for grades prekindergarten through twelve....").
[31] The substance of the rules need not be set forth as the parties agree they address sexualized content for books and other media, and that the enforcement proceedings were based upon these rules.
[32] We need not address the adequacy of a writ of prohibition as a remedy herein. We do note the presumption that public officials perform their public duties in good faith and we typically withhold equitable mandatory relief in anticipation of this performance. In re Initiative Petition No. 397, State Question No. 767, 2014 OK 23, n. 20, 326 P.3d 496, 504.
[33] Okla. Const. Art. XIII, § 1: The Legislature shall establish and maintain a system of free public schools wherein all the children of the State may be educated.
[34] Okla. Const. Art. XIII, §5 supra at note 1.
[35] Western Heights Indep. Sch. Dist. v. State, 2022 OK 79, ¶79, n.79, 518 P.3d 531, 555 (citing Indep. Sch. Dist. # 52 of Okla. Cty. v. Hofmeister, 2020 OK 56, ¶¶29-39, 473 P.3d 475, 489-93; Sch. Dist. No. 25 v. Hodge, 1947 OK 220, 199 Okla. 81, 183 P.2d 575, 583-85).
[36] Western Heights Indep. Sch. Dist. v. State, supra note 35, 2022 OK 79, ¶32, 518 P.3d at 543.
[37] Bd. of Educ.of City of Okla. City v. Cloudman, 1939 OK 297, 92 P.2d 837, 841 (Concerning a board of education of an independent school district: "The school board has and can exercise those powers that are granted in express words; those fairly implied in or necessarily incidental to the powers expressly granted, and those essential to the declared objects and purposes of the corporation.").
[38] Bd. of Educ. of City of Muskogee v. Baldwin, 1943 OK 200, 137 P.2d 932, 933-34 (explaining Brooks v. Shannon, 1939 OK 34, 86 P.2d 792, and part of its Court Syllabus, "Where Boards of Education in Independent School Districts act within the limits of the power conferred upon them, their discretion cannot be interfered with by injunction, unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of discretion; and this general rule applies, although the discretion may be widely exercised."); cf. Patel v. OMH Medical Center, Inc., 1999 OK 33, ¶ 20, 987 P.2d 1185, 1194 (generally, an abuse of discretion occurs when discretion is employed on untenable grounds, or for untenable reasons, or is manifestly unreasonable, and an assessment of abuse of discretion is based upon applying evidence, reason, and controlling legal principles).
[39] Shellem v. Gruneweld, 2023 OK 26, 535 P.3d 1208.
[40] Western Heights Indep. Sch. Dist. v. State, supra note 35, 2022 OK 79, ¶82, 518 P.3d at 557.
[41] Fanning v. Brown, 2004 OK 7, ¶10, 85 P.3d 841, 845-46 (words in a statute are to be construed according to their plain and ordinary meaning unless it is clear the legislature intended a different meaning).
[42] Okla. Const. Art. XIII, § 5 supra at note 1.
[43] Stitt v. Treat, 2024 OK 21, ¶30, 546 P.3d 882, 893.
[44] Indep. Sch. Dist. # 52 of Okla. Cty. v. Hofmeister, supra note 35, 2020 OK 56, ¶80, 473 P.3d 509-10 (a local school district has a legal interest in a correct amount of State Aid appropriated and apportioned funds in accordance with state statutes when the State Board in its supervisory statutory role remits an incorrect amount to the local school district).
[45] See, e.g., Okla. Pub. Employees Ass'n v. Okla. Dep't of Cent. Servs., 2002 OK 71, ¶31, 55 P.3d 1072, 1085 (a commission possessed constitutional authority to adopt rules with a specific statutory authorization that rules must be necessary to effectuate the statutes).
[46] Adams v. Professional Practices Comm'n, 1974 OK 88, 524 P.2d 932, 934 (administrative agency's power to make rules for its own procedures does not include authority to make rules which extend the agency's powers beyond those granted by statutes).
[47] See, e.g., 70 O.S.2021 § 3-104.3 ("the State Board of Education shall take action as required by this act"), §3-104.4 ("The State Board of Education shall adopt standards for the accreditation of the public schools"); §9-101.1 (an official inspector designated by the State Board shall verify transportation equipment provided by a local board of education is being maintained and operated in accordance with all the requirements of the rules of the State Board).
[48] 75 O.S.2021 § 308.3(C) (in part): If any rule received on or before the date established...is not subject to a joint resolution passed by both houses of the Legislature...the Governor may declare any rules...not subject to a joint resolution...to be approved or disapproved...by publishing a single declaration.
[49] We need not address hypothetical issues. Dank v. Benson, supra at note 8.
[50] Phillips Petroleum Co. v. Corp. Comm'n, 1956 OK 313, 312 P.2d 916, 919 (when adjudication of the constitutional issue is not necessary to resolve the controversy the court may decline to address the constitutionality of a statute); Jones v. Shaw, 1965 OK 67, 441 P.2d 990, 992 (Court would not reach the constitutional question raised in support of granting a writ of mandamus because denial of the writ was proper upon other grounds, and constitutional question should not be entertained in advance of strict necessity for its adjudication).

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1987 OK 114, 746 P.2d 1135, 58 OBJ 3282, 
Fair School Finance Council of Oklahoma, Inc. v. State
Cited

 
1917 OK 229, 165 P. 419, 63 Okla. 285, 
STATE ex rel. FREELING v. LYON
Cited

 
1935 OK 1184, 53 P.2d 247, 175 Okla. 417, 
HARDEN v. DISTINCT COURT OF TULSA COUNTY
Cited

 
1966 OK 157, 418 P.2d 337, 
STATE v. JOHNSON
Cited

 
2002 OK 47, 49 P.3d 719, 
GRIMES v. OKLAHOMA CITY
Cited

 
2003 OK 10, 65 P.3d 591, 
CHRISTIAN v. GRAY
Cited

 
2003 OK 114, 89 P.3d 1034, 
BOSTON v. BUCHANAN
Cited

 
2006 OK 27, 174 P.3d 559, 
MILLER DOLLARHIDE, P.C. v. TAL
Cited

 
1930 OK 455, 292 P. 365, 145 Okla. 202, 
LOONEY v. LEEPER
Cited

 
2011 OK 84, 264 P.3d 1197, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOTHERSHED
Cited

 
2013 OK 18, 300 P.3d 1188, 
BERTRAND v. LAURA DESTER CENTER
Cited

 
1977 OK 98, 565 P.2d 15, 
UMHOLTZ v. CITY OF TULSA
Cited

 
1977 OK 131, 566 P.2d 134, 
HALSTEAD v. McHENDRY
Cited

 
2015 OK 51, 353 P.3d 532, 
DUTTON v. CITY OF MIDWEST CITY
Discussed

 
1979 OK 92, 596 P.2d 882, 
STATE EX REL. OKL. TAX COM'N v. MOURER
Cited

 
2021 OK 30, 489 P.3d 1005, 
OKLAHOMA STATE MEDICAL ASSOCIATION v. CORBETT
Cited

 
2000 OK 40, 5 P.3d 1088, 71 OBJ 1291, 
Dank v. Benson
Cited

 
2022 OK 73, 520 P.3d 370, 
RITTER v. STATE
Cited

 
1911 OK 352, 119 P. 207, 29 Okla. 738, 
ATCHISON T. & S. F. RY. CO. v. LOVE
Cited

 
1911 OK 62, 113 P. 910, 28 Okla. 83, 
REGENTS OF THE STATE UNIV. v. TRAPP
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA